Paul M. Hoffman, Esq.
Robertson, Monagle & Eastaugh
9360 Glacier Hwy., Suite 202
Juneau, AK 99801
(907) 586-3340 - phone
(907) 586-6818 - fax
pmhoffman@romea.com
Attorneys for Safeway, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT KETCHIKAN

| | |
|---|---|
| GERALD EDENSHAW, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| SAFEWAY, INC., CARR'S QUALITY CENTER and SAFEWAY FOOD & DRUG. | ) ) ) ) |
| Defendant. | ) |
| | )  Case No. 5:05-CV-0005-RRB |

### MEMORANDUM IN SUPPORT OF SAFEWAY'S MOTION FOR SUMMARY JUDGMENT

Defendant, Safeway, Inc., (Safeway), has moved the court for a summary judgment dismissal of this action pursuant to Federal R. Civ. P. 56 and D. Ak. LR 7.1. Safeway has moved for this summary judgment of dismissal for plaintiff's failure to state a claim upon which relief can be granted.

### I. Statement of Facts

Edenshaw filed a complaint in state court on May 6, 2005, alleging a slip and fall accident on May 10, 2003 on Safeway's premises in Ketchikan. He alleged that

Safeway was negligent in its care of the floor where he fell. The facts show that plaintiff fell tripping over his own feet while walking sideways and that Safeway acted with reasonable care in maintaining the floor where plaintiff fell.

## I. Statement of Facts:

Plaintiff, Gerald Edenshaw (herein Edenshaw), was familiar with the Safeway, "Carr's," Store, in Ketchikan, having shopped there for many years. Edenshaw p. 22. He was familiar with the layout of the store. Edenshaw pp. 22-23.

Approximately 7:25 p.m. on May 10, 2003 plaintiff walked from a checkout stand toward the entrance/exit to the Safeway store in Ketchikan. Edenshaw p. 31 and Affidavit of Paul Denton para. 3. The distance between where he fell and the entrance/exit door was estimated to be about 15 feet. Edenshaw p. 29. The aisle was about 12 feet wide. Edenshaw p. 30. He was carrying two plastic bags of purchases, but does not recall what those were. Edenshaw pp. 30-31. He may have earlier seen some people in the store he knew, but nothing unusual and no one he knew to remember their name. Edenshaw p. 51. Just after he left the checkout stand, he fell to the floor, somewhat to one side, rapidly got up and left the store at a normal pace with his left ankle hurting. Edenshaw pp. 34-35.

Edenshaw's friend, Monica Wallace, who had been shopping with him, left the checkout stand ahead of him. Wallace p. 9-10. She was at the entrance/exit when she looked back over her right shoulder and saw Edenshaw fall to the floor. Wallace pp. 11-12. He jumped up with an embarrassed look and walked out of the store. Wallace

p. 24 & Edenshaw p. 34. She was driving her pickup, which he got into in the parking lot. Wallace pp. 14-15. As they were leaving the parking lot, Edenshaw said his ankle was hurting. Wallace p. 15. She returned to the store to tell someone. Wallace p. 16. There she saw Peter Usher, a person she knew, and told him that Edenshaw had hurt himself. Wallace pp. 16-17. She did not inspect the floor where the fall occurred, and she did not see anyone cleaning that area of the floor. Wallace pp. 17-18.

In the look back over her right shoulder from the entrance/exit door, Ms. Wallace gave Edenshaw a facial expression meaning "to hurry up." Wallace p. 14. He saw and understood her expression. Edenshaw p. 32. She did not like staying in the store and it was Edenshaw who liked to shop and talk to people. Wallace p. 13 & Edenshaw p. 33.

Edenshaw saw nothing on the floor prior to his falling. Edenshaw p. 35. Upon getting up, he has some vague recollection of seeing something small and black, but does not know for sure what it was, as it could have been a streak on something, which he did not touch and it could be a remembrance of what Ms. Wallace told him. Edenshaw pp. 44-47. He also does not know that he stepped on "the small black thing" or anything else on the floor. Edenshaw p. 46-47. He believes he would not have fallen without there being something on the floor. Edenshaw pp. 46-47. He does not know when the floor had been inspected and what procedures Safeway has for maintaining the floors in the store in a reasonably safe condition. Edenshaw p. 81.

Looking back from the entrance/exit door, Ms. Wallace believes she saw

something small and black on the floor at the location of Edenshaw's fall. Wallace pp. 17 & 23. She does not know if he stepped on what she saw, (Wallace 23 & 29), does not know if he slipped on something, (Wallace p. 28), but believes he would not have fallen unless he slipped on something. Wallace pp. 28-29. Ms. Wallace acknowledges having poor eyesight. Wallace 27. She was at the doorway, looking back a distance she can not estimate, but Mr. Edenshaw thought was 15 feet. Wallace p. 23. She does not know when the floor had been last inspected by Safeway employees and what procedures Safeway has for maintaining the floors in the store in a reasonably safe condition. Wallace p. 29.

At the time Edenshaw fell, Leah Ibale and Lance Lyons were working as checkers at the check stands in the front of the store. See affidavits of Ms. Ibale and Mr. Lyons attached. There is an approximately twelve foot isle between the check stands and some cigarette display cases for patrons to walk while leaving the store. Edenshaw p. 30. See also pictures attached to Affidavit of Paul Denton. Leah Ibale saw Edenshaw walk sideways, fall and get up quickly to leave the store. Ms. Ibale Affidavit paragraphs 3 & 4. She promptly inspected the area of the fall and found nothing on the floor. Ms. Ibale Affidavit paragraph 4. She had just sold cigarettes to a customer which required her to walk across the area of the floor where Edenshaw fell, and had seen nothing on the floor which was in very good condition. Ms. Ibale Affidavit paragraphs 3 and 6. She was aware of the store policy of keeping the floors clean and would have picked up anything left on the floor when she crossed it

moments before Edenshaw's fall. Ms. Ibale Affidavit paragraph 8.

Lance Lyons is a resident of Ketchikan, Alaska and was employed by Safeway, Inc. ("Safeway") from about June 5, 1996 through August 14, 2004 as a checker, night manager, front end manager, shipping clerk and safety manager. See affidavit of Lance Lyons paragraph 1. He is presently employed at The Landing in Ketchikan.

On May 10, 2003 he was working at the front of the store as a checker. He had just crossed this area of the floor 5 minutes before the customer fell, and found it was clean and free of debris. The customer fell right behind him while he was at the check stand. That made a sound, so he immediately turned around and saw the man jump right up and head out the door. Mr. Lyons Affidavit paragraph 3.

Leah Ibale, a co-worker posted at a check stand, checked the floor right away and he checked it right after her while going to get cigarettes. Neither of them could find anything that would have caused the man to fall. There was no debris on the floor, no produce or produce marks and there were no wet spots. Mr. Lyons Affidavit paragraph 4. There were some black boot marks, as there usually are, from the boots of customers walking on the floor. A woman came into the store to report that the man was injured. Mr. Lyons Affidavit paragraph 5.

He notified the Assistant Manager, Paul Denton, of the incident and to come up front to take the lady's report as the check stands were busy at that time. The area of the floor where the man fell was also checked by Brandon S. Romey, a 'courtesy' employee within five (5) minutes of the incident and Paul Denton took some

photographs within seven or eight minutes of the fall. A customer in Leah Ibale's checkout line, Becky Crabtree, also witnessed the accident and commented on the fine condition of the floor. As Mr. Lyons was the Safety Manger at the time, he knew it was important to look at the floor where the fall happened and determine its condition. He also had Leah and Becky check the floor and he call Paul Denton to take pictures. Mr. Lyons Affidavit paragraphs 6-7.

Paul Denton is also a resident of Ketchikan, Alaska and was employed by Safeway from August 1, 1996 through January 6, 2006 as the front end manager, Second Assistant and then Assistant Manager. Presently he works for the Chevrolet dealership in Ketchikan as a salesman. Mr. Denton's Affidavit paragraph 1.

On May 10, 2003 Mr. Denton was working in the back of the store when he was notified by Lance Lyons that a customer had fallen as he was leaving the store. He noted the time as being 7:25 in the evening as he directed one of the courtesy staff to obtain a camera and meet him at the front of the store. Mr. Denton's Affidavit paragraph 3.

At the front of the store a few minutes later, he took the camera and spoke with two employees, Lance Lyons and Leah Ibale, who had witnessed the accident and, after being assured that he was looking at the correct spot where the fall had taken place, he took several photographs of floor area. He also asked the employees if anyone had mopped or swept the area after the incident, and was assured the condition of the floor had not been changed since the fall. He looked for any object or item that

could have caused the customer to slip or stumble and found none. There were several boot marks on the floor, but this was an everyday occurrence in a region where many people wear boots due to the local weather conditions. Mr. Denton's Affidavit paragraph 4.

Mr. Denton spoke with employees, Lance Lyons and Leah Ibale, both of whom had witnessed the fall or seen the immediate aftermath, and was informed that neither of them had seen anything on the floor and felt that the customer had tripped over his own feet as a result of rushing and walking sideways. Mr. Denton's Affidavit paragraph 5.

Both Ms. Ibale and Mr. Lyons noted that the man picked himself up immediately and was limping when he left the store. Lance Lyons informed Mr. Denton that he had last crossed that area of the floor only five minutes prior to the fall, and the floor was clean and clear of debris. Lance also checked the floor right after the accident and ascertained that the floor was, indeed, clean and free of debris. Mr. Denton's Affidavit paragraph 5.

Shortly thereafter, a woman Mr. Denton assumed to be the customer's girlfriend returned to the store to report that the customer who fell was Gerald Edenshaw and that he had injured himself. Mr. Denton advised her through Peter Usher, the front end supervisor, that if Mr. Edenshaw was injured, he should seek medical attention. That was said out of concern for Mr. Edenshaw, not as a statement that the store was agreeing to pay for his medical care. Mr. Denton's Affidavit

paragraph 6.

At shortly before 10:00 that evening, pursuant to company policy, Mr. Denton filed an online notice to the Liability & Claims Department in Seattle providing all information relating to the incident of which he was then aware. Mr. Denton's Affidavit paragraph 7.

Safeway has a policy of having a person from the various departments during the day on a hourly basis, perform what they refer to as a "sweep," while completing a "sweep log" of all the locations in the store and noting it on a form. The sweep log form attached to his affidavit shows that Gary Watts began the sweep at 6 p.m. It takes some time to complete the sweep, as all areas have to be looked over and if anything is found out of order, the person would clean or stay there while calling for help to correct the problem. In looking over the checkouts and entryways, the area where Mr. Edenshaw fell would have been checked and found clean or the area would have been cleaned at the time of that sweep. Mr. Denton's Affidavit paragraph 9.

That "sweep" would have been addition to the observations and attention checkers such as Leah and Lance would have given the area. All employees are trained to not pass-by items on the floor, but to either themselves or by calling for help, clean up any item found on the floor promptly, or guard the area until help arrives to do the clean up. Lance and Leah had worked at the store long enough that Mr. Denton had confidence they would have picked up any item on the floor, had they seen it while going about their tasks, which included while crossing the area of Mr.

Edenshaw's fall to get cigarettes for a customer. Mr. Denton's Affidavit paragraph 10.

In summary, the floor was clear at the time of the sweep by Gary Watts some time after 6:00 p.m. Affidavit of Paul Denton paragraph 9. The floor area where Edenshaw fell was walked and inspected by Leah Ibale and Lance Lyons just minutes before Edenshaw fell. The floor area where Edenshaw fell was inspected within moments after the fall by Leah Ibale and Lance Lyons and nothing was found on the floor. Pictures taken of the floor within 7-8 minutes after the fall by Paul Denton show the floor without anything on it except some random black boot marks. When Ms. Wallace returned to the store within minutes of leaving the store with Edenshaw, she did not see anyone cleaning the floor and did not inspect the floor herself.

## II. Points and Authorities:

**A.** **Standard for summary judgment:** Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[1] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[2] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[2] *Id.* at 323-325.

showing the existence of a genuine issue for trial.[3] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[4] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[5]

The standard for summary judgment is essentially the same under Alaska State law as the non-movant must present or point to admissible evidence in order to meet his burden of showing a material issue of fact. The non-movant is

> required, in order to prevent entry of summary judgment, to set forth specific facts showing that he could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists.

*McGlothlin v. Municipality of Anchorage,* 991 P.2d 1273, 1277 (Alaska 1999).

**B.**     **Principles of law for landowners:** As noted in *Webb v. City and Borough of Sitka,* 561 P.2d 731, 733 (Alaska 1977), ordinary principles of negligence apply to govern the conduct of a landowner and common law categories controlling the extent of duty are eliminated. The rule adopted is as follows:

> A landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of

---

[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-9 (1936).
[4] *Id.* at 255.
[5] *Id.* at 248-9.